549 S.E.2d 323

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Jeffrey Allan PETTREY, Defendant Below, Appellant.**

**No. 28401.**

Supreme Court of Appeals of West Virginia.

Submitted March 7, 2001.

Decided June 13, 2001.

Concurring Opinion of Justice Starcher, July 24, 2001.

---

Darrell V. McGraw, Jr., Esq., Attorney General, Dawn E. Warfield, Esq., Deputy Attorney General, Charleston, West Virginia, Attorney for Appellee.

Tracy P. Burks, Esq., Mercer County Public Defender Corporation, Princeton, West Virginia, Attorney for Appellant.

MAYNARD, Justice:

The appellant, Jeffrey Allan Pettrey, was convicted by the Circuit Court of Mercer County, West Virginia, of three counts of first degree sexual assault, three counts of incest, and three counts of sexual abuse by a parent. After sentencing the appellant to the penitentiary on each count with the sentences to run consecutively, the court suspended the sentences for sexual assault and sexual abuse. The appellant was ordered to serve the sentences for the incest convictions and then be placed on probation for five years with the conditions that he receive treatment and/or counseling for pedophilia and not associate with children under eighteen years of age. On appeal, the appellant contends the circuit court committed reversible error by admitting inadmissible hearsay evidence; by denying his motion for a competency evaluation of the child victims; by recognizing play therapy as a scientifically reliable method for diagnosing child abuse; and by denying his motion for acquittal notwithstanding the verdict or for a new trial. We find no error and affirm.

# I.

## FACTS

The appellant has two children, D.R., who is approximately eight years old, and K.R., who is approximately six years old. The appellant was never married to the children's mother, and the record is not clear as to how long they lived together. Visitation between the appellant and his children began in 1995. At some point the children's mother, R.R., became pregnant to her fifteen-year-old boyfriend. R.R. and her boyfriend were living in North Carolina at the time. D.R. and K.R. moved to West Virginia to live with their maternal grandmother. Both children accused their father of sexually abusing them. The authorities were notified and Detective Darrell Bailey investigated the case.

The grand jury returned a 12-count indictment against the appellant on February 9, 1999, charging him with four counts of sexual assault in the first degree in violation of W.Va.Code § 61-8B-3, four counts of incest in violation of W.Va.Code § 61-8-12, and four counts of sexual abuse by a parent in violation of W.Va.Code § 61-8D-5. The indictment alleged that the appellant engaged in sexual intercourse, oral sex, with D.R. on two occasions and K.R. on two occasions between September 1995 and May 7, 1998. The incidents occurred while the children were visiting with their father at his mother's house.

The appellant's trial was held on June 1 and 2, 1999. The State presented the testimony of Betsy Akers, D.R.'s kindergarten teacher; Margaret Spangler, the children's maternal grandmother; and Phyllis Hasty, a children's counselor at Southern Highlands Community Mental Health Center. The appellant testified in his own defense and presented the testimony of Sandra Hylton, his mother, and Dr. Joli Brams, a licensed psychologist. The children did not testify.

Ms. Akers testified that D.R. was in her kindergarten class from October 1997 to June 1998. She noticed a change in D.R.'s behavior in mid-April of that year. He seemed sad or depressed and wanted to be left alone. On one occasion, he pulled down

his pants in the cafeteria and "mooned" the other students. When she discussed the incident with D.R., he told her that "well daddy did that to him." He also told his teacher "if he didn't do what daddy said he would beat him really hard[ ]" and the appellant made him lie down "for daddy to suck his wiener[.]" Ms. Akers observed D.R. placing stuffed animals in sexual positions. When she asked D.R. what he was doing, he told her the animals were "[e]ating each other out." Because she is required by law to report incidents of sexual abuse, Ms. Akers reported these conversations to the authorities.

Ms. Spangler testified that the children lived with her from the time D.R. started preschool through the beginning of first grade. During his kindergarten year, Ms. Spangler testified that she noticed a change in D.R.'s behavior. He began throwing tantrums and "would set and cry a lot, that he felt dirty and nasty[.]" Upon returning from a visit with her father on one occasion during this time period, Ms. Spangler said K.R. began "screamin' and cryin" when she went to the bathroom. When her grandmother went to check on her, she said K.R. was "red and sore[.]" Ms. Spangler also stated that when she gave K.R. a bath, "the water and soap would burn her bottom." She stated that the children enjoyed visiting their father when they initially came to live with her, but later D.R. did not want to visit or talk to his father. Ms. Spangler related an incident in which D.R. awoke with an erection, pulled down his undershorts and rubbed against her; he then touched her in the groin area. This occurred about the time the incidents at school were reported.

Phyllis Hasty testified that "[a] children's counselor is specifically trained to give counseling to a child, and my specific area that I work with, primarily, is play therapy." Ms. Hasty stated that she treated K.R. prior to working with D.R. However, D.R. disclosed the incidents of sexual abuse first.[1] Ms. Hasty began treating K.R. in February 1998 when the child was brought to her because of

"acting out behavior and possible sexual abuse." She saw K.R. approximately seventeen times beginning when the child was three and one-half years old. D.R. was brought to her after the May 7, 1998 report of his behavior at school. Ms. Hasty saw D.R. approximately ten times. During her sessions with the children, they engaged in child-directed or nondirective play therapy in which small children use various toys to act out their feelings because they are unable to fully verbalize them.

Ms. Hasty testified that D.R. stated "daddy hurt me" during his third counseling session. She testified further that he elaborated on the incident by saying that "daddy held him down, pulled down his pants, sucked me, and he pointed to his groins, and he wouldn't let me up." This episode took place in D.R.'s paternal grandmother's bedroom. D.R. also stated "that he [ ] saw daddy do this with K." and "[h]e also saw daddy with K. with his hands between her legs[.]" After disclosing the abuse, D.R. immediately walked over to the bot bag and began hitting it, calling it daddy.

After being in therapy almost five months, K.R. told Ms. Hasty that her daddy hurt her. She testified that K.R. told her "daddy played with my pee-pee and I had to play with his, that it hurt, and that she didn't like the white stuff in her mouth. . . . [S]he said it was bad and made a sour face." Prior to making this statement, Ms. Hasty observed K.R. playing with dolls. K.R. called one of the male dolls "the mean doll and he would hurt her baby[.]" In April, K.R. "had him hurting the baby and she had him hit the baby in the face and then bite the baby, . . . and had [the head of] the male doll in the groin, in the pelvic region of the other doll[.]" Ms. Hasty said that she made note of these behaviors because she thought they were alarming but at the time she did not view the behaviors as being diagnostic of abuse. After the disclosure in August, she reported the incident to Detective Darrell Bailey.

Sandra Hylton, the appellant's mother, testified that the appellant lived with her in a

---

1. D.R. disclosed the incidents of sexual abuse on July 14, 1998 while K.R. said nothing about the abuse until August 4, 1998.

two-bedroom apartment. D.R. and K.R. would stay with her intermittently on weekends and at times for a week or two when their mother was living in North Carolina. She stated that the appellant had a loving relationship with his children and that both continued to stay with the appellant in her home after the allegations of abuse were made. The appellant testified that he is the father of D.R. and K.R. and that he lives with his mother. He stated that the children stayed with him on and off since 1995, the dates alleged in the indictment. The appellant testified that he was not involved in a dispute with R.R. and that he never had problems with the children's maternal grandmother. He could think of no reason why D.R. and K.R. would make up these stories. He denied sexually abusing his children.

Dr. Joli Brams, the appellant's expert, is a licensed psychologist. Dr. Brams reviewed the children's treatment records but did not interview D.R. and K.R. At trial, she testified that nondirective play therapy is not diagnostic. She stated that preconceived notions result in interviewer bias and that preschool age children are most susceptible to interviewer bias. She stated that the behaviors exhibited by these children were not clear indicators of sexual abuse but were clear indicators that D.R. and K.R. were "not brought up the right way." She stated that "all children lie" and suggested that D.R. and K.R.'s environment might explain their explicit knowledge of sexual matters. However, she admitted she had not met any family members.

At the close of the evidence, the court dismissed counts 2, 6, and 10[2] of the indictment because the State proved only one act of sexual assault involving D.R. The jury convicted the appellant of the remaining nine counts. The sentencing order was entered on August 5, 1999. The appellant was ordered to serve fifteen to thirty-five years in the penitentiary on each count of first degree sexual assault and five to fifteen years on

each count of incest and sexual abuse by a parent; the court then suspended the sentences for sexual assault and sexual abuse. The appellant was ordered to serve the sentence for the incest convictions after which he will be placed on probation for five years with the conditions that he receive treatment and/or counseling for pedophilia and not associate with children under the age of eighteen. The appellant appeals from this order.

On appeal, the appellant contends the circuit court erred by allowing inadmissible hearsay during the trial; by failing to grant a competency evaluation of the children or to question them; by recognizing play therapy as a scientifically reliable method of diagnosing child abuse; and by refusing to grant a judgment of acquittal or a new trial based upon insufficiency of the evidence. The State asserts that the circuit court committed no error and argues that the judgment of the court should be affirmed. We agree.

## II.

### DISCUSSION

■ The appellant submits the circuit court erred by allowing Betsy Akers and Phyllis Hasty to testify regarding statements made to them by the child victims.[3] He contends this is error because the children did not testify, the statements were not inherently trustworthy, nor did the statements fall within a hearsay exception. Therefore, says the appellant, the admission of these statements violates his federal constitutional right to confrontation.

Prior to trial, the appellant filed a motion in limine to exclude the testimony of the children's mother, the maternal grandmother, school officials, the investigating police officer, and Ms. Hasty. The appellant believed the testimony of these witnesses would be inadmissible hearsay which would not fall under any exception to the hearsay rule. He also argued that Ms. Hasty's testimony

---

**2.** Counts 2, 6, and 10 of the indictment alleged sexual assault, incest, and sexual abuse by a parent of D.R.

**3.** The appellant does not complain about Margaret Spangler's testimony. The court ruled the

children's grandmother could not testify regarding statements made by the children; she could only testify regarding actions of the children which she observed.

should not be admitted under West Virginia Rule of Evidence 803(4) [4] which excepts from the hearsay rule statements made for the purposes of medical diagnosis or treatment. The circuit court "ruled that the statements of D.R. to his school teacher and principle [sic] were admissible; the statements of child(ren) to the school counselor, the police officer and the grandmother were inadmissible[.]" After receiving further evidence, the court determined that Ms. Hasty's testimony "falls within the accepted exceptions. It deals with treatment and diagnosis." The court allowed Ms. Hasty to testify under the medical diagnosis or treatment exception to the hearsay rule.

■ This Court previously said that " '[r]ulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion.' State v. Louk, 171 W.Va. 639, 643, 301 S.E.2d 596, 599 (1983)." Syllabus Point 2, State v. Peyatt, 173 W.Va. 317, 315 S.E.2d 574 (1983). In the case at bar, the circuit court determined that D.R.'s actions at school were "obviously admissible." The court further ruled that the statements made by D.R. to his teacher were admissible under State v. Edward Charles L., 183 W.Va. 641, 398 S.E.2d 123 (1990), not for the truth of the matter asserted, but "to explain the action of the teacher and the principal in referring the matter to the mother and counselor and the matter eventually getting to Ms. Hasty for—for her counseling and treatment." Furthermore, during the trial, the court plainly instructed the jury to consider the child's statements for that limited purpose only.

■ Syllabus Point 1 of State v. Maynard, 183 W.Va. 1, 393 S.E.2d 221 (1990), interprets West Virginia Rule of Evidence 801(c) in which hearsay is defined.[5] We are guided by this syllabus point, which reads as follows:

Generally, out-of-court statements made by someone other than the declarant while testifying are not admissible unless: 1) the statement is not being offered for the truth of the matter asserted, but for some other purpose such as motive, intent, state-of-mind, identification or reasonableness of the party's action; 2) the statement is not hearsay under the rules; or 3) the statement is hearsay but falls within an exception provided for in the rules.

The circuit court conducted extensive questioning regarding the testimony Ms. Akers would give at trial prior to admitting the evidence. The court was satisfied that the purpose of the testimony was to explain why Ms. Akers reported the incident. After reading and studying the record submitted in this case, we are convinced Ms. Akers' testimony was offered solely to explain the reasons she discussed the child's behavior with his grandmother and referred him to a therapist for treatment. Because the statements were admitted not to prove the truth of the matter asserted but rather to show why the teacher reported the incident, the statements were not hearsay by definition. Statements which are not offered for the truth of the matter asserted do not implicate the Sixth Amendment right to confrontation. State v. Dillon, 191 W.Va. 648, 658, 447 S.E.2d 583, 593 (1994). Therefore, the statements were properly admitted at trial.

■ Next, we consider Ms. Hasty's testimony and whether the appellant was denied his right to confrontation or whether the statements made by the children to her were properly admitted through her testimony. We begin by acknowledging that "[t]he Confrontation Clause contained in the Sixth Amendment to the United States Constitution provides: 'In all criminal prosecutions, the accused shall … be confronted with the

4. West Virginia Rule of Evidence 803(4) states:
 The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
 (4) Statements for purposes of medical diagnosis or treatment.—Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general

character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

5. " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." W.Va.R.Evid. 801(c).

witnesses against him.' This clause was made applicable to the states through the Fourteenth Amendment to the United States Constitution." Syllabus Point 1, *State v. James Edward S.*, 184 W.Va. 408, 400 S.E.2d 843 (1990).

■ The basic principles for admitting evidence under the Confrontation Clause were enunciated in *James Edward S.* and reiterated in *State v. Mason*, 194 W.Va. 221, 460 S.E.2d 36 (1995). Syllabus Point 2 of *Mason* reads as follows:

"The two central requirements for admission of extrajudicial testimony under the Confrontation Clause contained in the Sixth Amendment to the United States Constitution are: (1) demonstrating the unavailability of the witness to testify; and (2) proving the reliability of the witness's out-of-court statement." Syllabus Point 2, *State v. James Edward S.*, 184 W.Va. 408, 400 S.E.2d 843 (1990).

■ This Court later clarified the unavailability prong by stating:

We modify our holding in *James Edward S.*, 184 W.Va. 408, 400 S.E.2d 843 (1990), to comply with the United States Supreme Court's subsequent pronouncements regarding the application of its decision in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), to hold that the unavailability prong of the Confrontation Clause inquiry required by syllabus point one of *James Edward S.* is only invoked when the challenged extrajudicial statements were made in a prior judicial proceeding.

Syllabus Point 2, *State v. Kennedy*, 205 W.Va. 224, 517 S.E.2d 457 (1999). In the case at bar, the statements made by the children to Ms. Akers and Ms. Hasty were obviously not made in a prior judicial proceeding. Therefore, the unavailability analysis pertinent to the Confrontation Clause is not applicable.[6]

■ Furthermore, evidence which falls under a firmly rooted exception to the hearsay rule is admissible without violating the Confrontation Clause. In Syllabus Points 4 and 6 of *Mason*, 194 W.Va. 221, 460 S.E.2d 36 (1995), this Court clearly stated that:

"Even though the unavailability requirement has been met, the Confrontation Clause contained in the Sixth Amendment to the United States Constitution mandates the exclusion of evidence that does not bear adequate indicia of reliability. Reliability can usually be inferred where the evidence falls within a firmly rooted hearsay exception." Syllabus Point 5, *State v. James Edward S.*, 184 W.Va. 408, 400 S.E.2d 843 (1990).

For purposes of the Confrontation Clause found in the Sixth Amendment to the United States Constitution and Section 14 of Article III of the West Virginia Constitution, no independent inquiry into reliability is required when the evidence falls within a firmly rooted hearsay exception.

■ The circuit court found that Ms. Hasty's testimony was reliable, and therefore admissible, because it fell within the medical diagnosis or treatment exception to the hearsay rule. The appellant does not question whether the medical diagnosis or treatment exception is a firmly rooted hearsay exception. In fact, this Court previously said:

The following [is] ... not excluded by the hearsay rule, even though the declarant is available as a witness: ... (4) Statements for Purposes of Medical Diagnosis or Treatment. Statements made for pur-

---

**6.** Nonetheless, we pause here to note that the unavailability of the children was clearly demonstrated. Prior to trial, the appellant requested that the State not be permitted to proceed "without the children." During the May 24, 1999 pretrial hearing, the appellant admitted that it was not a requirement for the court, but he nonetheless requested "that the Court at least consider trying to bring these children in and try to talk to them[.]" Ms. Hasty testified that establishing rapport with D.R. and K.R. was very difficult. The prosecutor stated that initially she wanted the children to testify. She went to their home and tried to talk to them, but found that "[n]either one of them would say a word to me. I don't mean about this. I mean about anything." After forty minutes of visitation, the children would smile at Ms. Garton but would not utter a word. When this evidence was presented to the court, the judge determined that the children should not be brought into court and confronted; they were in no condition to testify, and, therefore, would not be made to do so.

poses of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment. W.Va.R.Evid. 803(4). Syllabus Point 4, *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). The appellant instead argues that the testimony of a therapist who treats child abuse clients with play therapy should not be recognized under the exception. This is the issue we must resolve.

██ If Ms. Hasty's testimony was properly admitted under the exception, reliability is satisfied and the Confrontation Clause is not implicated in this case. In order to admit hearsay evidence under the medical diagnosis and treatment exception, a two-part test must be met:

> The two-part test set for admitting hearsay statements pursuant to W.Va.R.Evid. 803(4) is (1) the declarant's motive in making the statements must be consistent with the purposes of promoting treatment, and (2) the content of the statement must be such as is reasonably relied upon by a physician in treatment or diagnosis.

Syllabus Point 5, *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). In *Edward Charles L.*, statements regarding sexual abuse by the child victims' father were made by the children to a psychologist who was treating them. The children told the psychologist about their father's sexual behavior and the sexual abuse which had been inflicted upon them. The circuit court permitted the psychologist to repeat the children's statements at trial, and Edward Charles L. appealed. On appeal, this Court affirmed by adopting the two-part test set forth above and stating "that not only was the motive behind the statements made by the children consistent with promoting treatment, ... but also, the statements were such that they would have been reasonably relied upon by [the psychologist] in his diagnosis and treatment of the children." *Id.*, 183 W.Va. at 654, 398 S.E.2d at 136.

Cases which discuss testimony offered by a social worker or counselor are more in line with the facts in the case at hand. In *Simmers v. State*, 943 P.2d 1189 (Wyo.1997), the defendant was convicted in Wyoming of twelve counts of second-degree sexual assault involving three child victims. Prior to trial, the district court determined that one victim, S.S., was not competent to testify. The State then offered the testimony of the social worker who counseled all three victims regarding statements made to her by S.S. The court admitted the testimony under the medical diagnosis or treatment exception. The defendant appealed, arguing, *inter alia*, that the social worker was improperly permitted to offer hearsay evidence in her testimony. On appeal, the Supreme Court of Wyoming determined the trial court did not err because the statements were made to a medical professional or professional counselor and the expert's testimony provided the proper foundation. That is, the statements were consistent with the purposes for which the witness became involved with the victim and the witness relied on the statements for diagnosis and treatment.

In *Gohring v. State*, 967 S.W.2d 459 (Tex. App.1998), the defendant was convicted of aggravated sexual assault of a child and indecency with a child. He appealed, alleging, *inter alia*, the trial court improperly admitted the hearsay testimony of a drama therapist and a social worker under the medical diagnosis and treatment exception. On appeal, the Court of Appeals of Texas noted that the drama therapist held a master's degree in drama therapy, had post master's training, and was a registered play therapist. Her purpose in talking to the child victim was to provide psychological treatment. The court held that the drama therapist could properly repeat the statements made to her by the child victim because it could reasonably be inferred that the victim understood she was seeing the therapist for the purpose of medical treatment in connection with the abuse and the statements were made for the purpose of medical diagnosis or treatment. The defendant argued the therapist was not a "medical person." In upholding the trial court's ruling, the court stated, "In any event, if the statement is made to another for the purpose of medical treatment, the person

to whom the statement is made does not necessarily have to be a 'medical person.'" *Id.* at 461. In this particular case, the testimony of the social worker was held to be inadmissible because the social worker worked in intake and investigation for Children's Protective Services (CPS). The court concluded that an investigator for CPS is not recognized as a medical professional.

In *State v. Ackerman*, 90 Wash.App. 477, 953 P.2d 816 (1998), the defendant was convicted of second degree child molestation of his stepdaughter. The trial court determined the child victim was unavailable to testify and allowed the State to introduce the testimony of the child's treatment counselor regarding statements made to her by the victim. These statements were admitted under the medical treatment exception. The defendant appealed. On appeal, the Washington Court of Appeals concluded that "[s]tatements made to counselors in child abuse or rape situations are encompassed by this exception[ ]" and "[s]tatements attributing fault to a member of the victim's immediate household may be reasonably pertinent to treatment and are thus admissible because it is 'relevant to the prevention of recurrence of injury.'" *Id.*, 90 Wash.App. at 482, 953 P.2d at 819 (quoting *State v. Butler*, 53 Wash.App. 214, 221, 766 P.2d 505, 509 (1989)) (citations omitted). The court held that the statements were properly admitted for purposes of medical treatment.

In *State v. Lopez*, 95 Wash.App. 842, 980 P.2d 224 (1999), a father was convicted of molesting and raping three of his five children. At trial, a social worker identified as a forensic interviewer for sexually abused children was allowed to testify concerning statements made to her by the children. The statements were admitted under the medical diagnosis and treatment exception to the hearsay rule. The State conceded the interviews conducted by the social worker were not for the purposes of medical diagnosis or treatment; rather, the interviews were conducted for purely forensic purposes. The State showed no relationship between the statements and diagnosis or treatment and ultimately conceded that the social worker "was hired solely to interview the children to determine the existence and extent of sexual abuse for trial purposes." *Id.*, 95 Wash.App. at 850, 980 P.2d at 228. The defendant appealed, alleging the court erred. On appeal, the Court of Appeals held the statements lacked the indicia of reliability required for admission under this exception. However, the conviction was affirmed because the statements were properly admitted under the child abuse hearsay statute.

In the case *sub judice*, Ms. Hasty testified at trial that she is a children's counselor at Southern Highlands Community Mental Health Center which means that she is "specifically trained to give counseling to a child, and [the] specific area that [she] work[s] with, primarily, is play therapy." Ms. Hasty testified that she has a bachelor's degree and a master's degree in social work and has fulfilled most of the qualifications necessary to become a registered play therapist. In order to become registered, one must obtain a master's degree in a related area of study such as social work, psychology, or counseling and have at least 2000 contact hours of therapy including 500 hours of supervised play therapy by a registered supervisor and 150 clock hours of training in play therapy. Ms. Hasty has completed all but 35 clock hours of training.

Prior to being employed in this job, Ms. Hasty testified that she worked for the West Virginia Department of Health and Human Resources as a child protective service worker and for Southern Highlands as an early interventionist. She went on to say that play therapy is client-centered and the child is the leader. She also said that her job is to help the children that are brought to her for treatment; she does not interview or investigate. Play therapy involves intensive listening which children find comforting. She works on self-esteem and attempts to teach sexual boundaries. When asked on cross-examination if she serves on a multidisciplinary team, she explained that she does and the team reviews cases of alleged child abuse, both sexual and physical. The team then discusses each case and determines the needs of each individual. She worked with the team which assessed D.R. and K.R.

K.R. was brought to Ms. Hasty for treatment for aggressive behavior and possible sexual abuse. Ms. Hasty was aware when D.R. was brought to her for treatment that his school had disclosed possible sexual abuse to the officials. Unlike *Gohring* and *Lopez*, the children were not brought to Ms. Hasty for investigative or forensic purposes. The statements made to Ms. Hasty by the children regarding the sexual abuse were made in a therapeutic context. Her sole involvement with K.R. and D.R. was diagnosis and treatment. Also, the statements were such that they were reasonably relied upon by Ms. Hasty in her diagnosis and treatment. Ms. Hasty's testimony was properly admitted at trial.

We, therefore, hold that when a social worker, counselor, or psychologist is trained in play therapy and thereafter treats a child abuse victim with play therapy, the therapist's testimony is admissible at trial under the medical diagnosis or treatment exception to the hearsay rule, West Virginia Rule of Evidence 803(4), if the declarant's motive in making the statement is consistent with the purposes of promoting treatment and the content of the statement is reasonably relied upon by the therapist for treatment. The testimony is inadmissible if the evidence was gathered strictly for investigative or forensic purposes. Moreover, statements which attribute fault to a member of the victim's household may reasonably be pertinent to treatment and are thus admissible because these statements are relevant to prevention of recurrence of injury.

We find no merit in the appellant's contention that the circuit court erred in failing to order a competency evaluation of the child victims and in not attempting to speak with the children regarding their possible appearance at trial. It is well settled that "[t]he question of the competency of a witness to testify is left largely to the discretion of the trial court and its judgment will not be disturbed unless shown to have been plainly abused resulting in manifest error." Syllabus Point 8, *State v. Wilson*, 157 W.Va. 1036, 207 S.E.2d 174 (1974). In other words, "the decision whether to submit a sexual assault victim to a competency examination

lies wholly in the court's discretion." *State v. Murray*, 180 W.Va. 41, 49, 375 S.E.2d 405, 413 (1988) (citations omitted).

Although the appellant concedes that the decision whether to submit a sexual assault victim to a competency evaluation lies within the circuit court's discretion, he argues the judge in this case erred because he did not attempt to speak with the children prior to trial. After the appellant requested a competency evaluation for both child victims, the record shows the court held a hearing on the motion. During the April 20, 1999 hearing, Ms. Hasty testified that the children would be embarrassed and it would be extremely difficult for them to relate this information to total strangers in court. She testified that K.R. had twelve sessions with her before she related the abuse to the therapist. During session number twelve, the disclosure spontaneously came out when the child finished playing with no evidence of coaching. Disclosure seemed easier for D.R. because he had previously told his grandmother and his teacher about the abuse. But Ms. Hasty did not think D.R. could face his father and talk about the abuse to a group of strangers. Whether K.R. would answer anything was questionable on any given day. After much discussion and the appellant objecting to closed-circuit video testimony, the prosecutor offered to talk to the children and report back to the court. The court finally denied the motion for competency evaluations stating that the children had been evaluated by Ms. Hasty who had met with D.R. and K.R. multiple times and, in the judge's experience, was "very qualified." However, the court said defense counsel could ask the court to reconsider after receiving Ms. Hasty's treatment notes and reviewing them with his expert.

On May 24, 1999, the prosecutor advised the court she met with the children and they would not talk. The appellant nonetheless requested that the children be brought into court and questioned before going any further. The request was denied. At a hearing the next day, Ms. Hasty testified that the children were not competent to testify; by that she explained that she meant they were mentally capable of testifying but were not

emotionally able to do so. At the conclusion of the hearing, defense counsel asked the court to reconsider the ruling. The court declined to change the ruling but did not rule out the possibility that the defense could call the children to testify.

The record evidence clearly shows that these children were not willing to testify or to even answer questions posed by the prosecutor. The prosecutor notified the court and defense counsel prior to the hearing that the children · were unavailable to testify. Furthermore, according to Ms. Hasty, the children were reluctant to discuss what had happened to them outside of a therapeutic setting. Under these circumstances, we cannot say the circuit court plainly abused its discretion resulting in manifest error.

Lastly, the appellant complains the evidence was not sufficient to sustain his convictions for sexual assault, incest, and sexual abuse by a parent. He argues this is so because the court permitted the State to proceed to trial solely on the basis of inadmissible hearsay; therefore, he says, no rational jury should have found him guilty. Since we previously determined the circuit court properly admitted the evidence at trial, we find no merit in this contention.

 We note, nonetheless, that "[a] convicted defendant who presses a claim of evidentiary insufficiency faces an uphill climb." *State v. LaRock*, 196 W.Va. 294, 303, 470 S.E.2d 613, 622 (1996). Our standard is stated in Syllabus Point 1 of *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995):

> The function of an appellant court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

This means that

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt.... [A] jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

Syllabus Point 3, in part, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

The circuit court believed the State proved only one sexual assault upon D.R. and dismissed the counts in the indictment which were based upon an alleged second sexual assault of D.R. The evidence presented at trial was sufficient to sustain the appellant's conviction on each of the remaining charges.

## III.

## CONCLUSION

We believe the evidence submitted by the State was properly admitted at trial and was sufficient to support the appellant's conviction. Based upon the foregoing, we hereby affirm the judgment of the circuit court.

Affirmed.

Justice DAVIS, concurs.

STARCHER, Justice, concurring:

(Filed July 24, 2001)

I concur in the judgment of the Court affirming the appellant's conviction; but I disagree with the majority's analysis. Specifically, I disagree with the majority opinion's reliance upon the "statements for medical diagnosis or treatment purposes" exception to the rule against hearsay (*West Virginia Rules of Evidence* 803(4)) to justify the admission of the children's statements to a therapist, and I disagree with

the majority's apparent acceptance of "play therapy" as especially credible evidence.

The Rule 803(4) "diagnosis and treatment" exception applies to hearsay statements made to a medical care provider—such as "I hurt my hand," or "I've been ill for a week." The theory behind this hearsay exception is that people ordinarily don't fabricate and falsify what they tell to a doctor who they believe is trying to help them. "[A] statement made in the course of procuring medical services *where the declarant knows that a false statement may cause misdiagnosis or mistreatment,* carries special guarantees of credibility . . . ," *White v. Illinois,* 502 U.S. 346, 356, 112 S.Ct. 736, 742, 116 L.Ed.2d 848, 859 (1992) (emphasis added).

However, where there is no showing that a declarant was aware that their statement was made for purposes of medical treatment and diagnosis, this exception is not applicable. *See Ring v. Erickson,* 983 F.2d 818 (8th Cir.1992), where the court held that Rule 803(4) was not applicable where a child did not even know that the interviewer was a doctor. *Accord, Olesen v. Class,* 164 F.3d 1096 (8th Cir.1999); and *U.S. v. Sumner,* 204 F.3d 1182 (8th Cir.2000).

In the instant case, because there was no showing that these very young children were aware that they were making statements for the purposes of treatment or diagnosis, the Rule 803(4) hearsay exception simply does not apply.

I also disagree with Syllabus Point 9 of the majority opinion, which incomprehensibly and unnecessarily elevates "play therapy" into the realm of medical diagnosis and treatment and suggests that statements made in such therapy are entitled to a special credibility.

Anyone who has played with small children for any length of time knows that children fabricate as part of play. Indeed, *fabrication and fantasy are at the core of children's play.* While statements made by a child during "play therapy" may be useful to an observant professional in understanding a child's emotional and psychological state, there is not a shred of evidence in the record of the instant case—or anywhere else that I am aware of—that statements made by a child to a person who is playing with the child are any more likely to be literally true than statements that the child makes in other situations. In fact, intuition suggests that the contrary may be true.

I understand the serious evidentiary difficulties that are faced by people who are investigating possible child sexual abuse. But unless we are to regard criminal trials as a procedure where anything that helps the prosecution to get a conviction is admissible, the rules that we use regarding the admissibility of alleged hearsay statements by children to therapists, investigators, and family members must not be based on patently false premises.

I would hold that in light of the totality of the circumstances in the instant case, the children's repeated statements to the therapist had enough *indicia* of reliability to fall under the general "catch-all" hearsay exception for unavailable witnesses that is set forth in *West Virginia Rules of Evidence* 804(b)(5). This conclusion is justified by the record; and this approach would not stretch the medical diagnosis and treatment exception beyond its proper scope, nor elevate "play therapy" into a heightened truth-detecting realm where it most assuredly does not belong.

Accordingly, I concur in the Court's judgment.

I am authorized to state that Justice ALBRIGHT joins in this concurring opinion.