# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**FILED**
**October 13, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 19-0831** (Jackson County 12-F-106)

**Edward C.,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Edward C., by counsel Paul A. Knisley, appeals the Circuit Court of Jackson County's September 5, 2019, resentencing order following his convictions for various sex crimes including first-degree sexual assault; first-degree sexual abuse; sexual abuse by a parent, guardian, custodian, or person in a position of trust to a child; and incest.[1] Respondent State of West Virginia, by counsel Elizabeth Grant, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On June 27, 2012, the Jackson County Grand Jury returned a thirty-six-count indictment charging petitioner with six counts of first-degree sexual assault; nine counts of first-degree sexual abuse; fifteen counts of sexual abuse by a parent, guardian, custodian or person in a position of trust to a child; and six counts of incest. Petitioner was alleged to have committed these crimes against S.C., his granddaughter, from August of 2009 through April of 2012. Both petitioner's and S.C.'s dates of birth were included in the indictment. Prior to petitioner's trial, the circuit court dismissed five counts: one count each of first-degree sexual assault, first-degree sexual abuse, and incest, and two counts of sexual abuse by a parent, guardian, custodian, or person in a position of trust to a child.

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.*, 190 W. Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

Petitioner's three-day trial began on June 10, 2014. Various witnesses testified; however, petitioner's first assignment of error is the only one related directly to the trial testimony. It concerns the testimony of Maureen Runyon, the coordinator of the Child Advocacy Center ("CAC") at Women and Children's Hospital in Charleston, West Virginia ("Women and Children's"). At trial, Ms. Runyon, a licensed master social worker who is also trained as a forensic interviewer, was designated as an expert in the field of child sexual abuse and forensic interview. Ms. Runyon recounted that she interviewed S.C. on April 25, 2012, when S.C. was seven years old.[2] Ms. Runyon explained that, while the interview itself entails "just fact finding," information imparted to her by the child during the interview may lead her to refer the child to counseling and therapy, which are "part of the whole array of services" offered by the CAC at Women and Children's. Based on her interview of S.C., Ms. Runyon concluded that a pediatrician should examine the child. She referred S.C. to a pediatrician, who then examined S.C. within two days of the interview. Ms. Runyon explained that the pediatrician, in turn, typically relies on the interview so that a victim does not need to be questioned again, and she agreed that the "interview is used for treatment purposes." Ms. Runyon further explained that "[p]art of the whole goal of a child advocacy center is to minimize the number of times a child has to tell people what their experience was because we know repeatedly having to do that can be traumatic in and of itself."

When the State moved to admit the video recording of Ms. Runyon's interview of S.C. into evidence, petitioner objected on the ground that "[j]ust because [the interview] may be used by other persons at the advocacy center to assist them in treatment[] does not convert the interview itself into anything other than a forensic fact finder." The court overruled the objection and admitted the recording of the interview into evidence.

At the conclusion of petitioner's three-day trial, he was convicted of each of the remaining thirty-one counts charged in the indictment. Following petitioner's convictions, the circuit court entered its sentencing order memorializing petitioner's aggregate sentence of not less than thirty-five nor more than one hundred twenty years of incarceration on September 16, 2014. Petitioner was appointed counsel to file a petition for a writ of habeas corpus, who discovered that a direct appeal had never been filed. Accordingly, petitioner was resentenced on September 5, 2019, so that he could pursue a direct appeal, and this appeal followed.

In the first of his three assignments of error, petitioner argues that the circuit court erred in admitting S.C.'s CAC interview because the interview did not meet the requirements of the hearsay exception for statements made for medical diagnosis or treatment. Petitioner contends that S.C. was taken to the CAC and interviewed solely to obtain information to use to indict petitioner, and he points to S.C.'s statement, "Well my papa he touched me right here and right here and that's why I'm here," to support his contention. Further, petitioner claims that S.C.'s statement was not of the type reasonably relied on by a physician for diagnosis or treatment because S.C. received no further treatment. Petitioner also argues that the interview should have been excluded under Rule 403 of the West Virginia Rules of Evidence, as its probative value was substantially outweighed by the danger of unfair prejudice or the needless presentation of cumulative evidence.

---

[2] The officer who investigated this case referred S.C. to Ms. Runyon.

We review this assignment of error for an abuse of discretion: "[R]ulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion." *State v. Pettrey*, 209 W. Va. 449, 456, 549 S.E.2d 323, 330 (2001) (citation omitted).

Rule 802 of the West Virginia Rules of Evidence contains a general prohibition against hearsay. Rule 803, however, delineates exceptions to that rule and includes an exception for "[a] statement that: (A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause." W. Va. R. Evid. 803(4). Thus,

> [t]he two-part test set for admitting hearsay statements pursuant to W.Va.R.Evid. 803(4) is (1) the declarant's motive in making the statements must be consistent with the purposes of promoting treatment, and (2) the content of the statement must be such as is reasonably relied upon by a physician in treatment or diagnosis.

Syl. Pt. 5, *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). And, in further view of this exception, we held in syllabus point 9 of *Pettrey* that

> [w]hen a social worker, counselor, or psychologist is trained in play therapy and thereafter treats a child abuse victim with play therapy, the therapist's testimony is admissible at trial under the medical diagnosis or treatment exception to the hearsay rule, West Virginia Rule of Evidence 803(4), if the declarant's motive in making the statement is consistent with the purposes of promoting treatment and the content of the statement is reasonably relied upon by the therapist for treatment. The testimony is inadmissible if the evidence was gathered strictly for investigative or forensic purposes.

209 W. Va. at 452, 549 S.E.2d at 326.

In *In re B.M.*, No. 17-0114, 2017 WL 2628569 (W. Va. June 19, 2017)(memorandum decision), we considered an argument similar to that advanced by petitioner. The petitioner in *B.M.* asserted that his child victim's statements to the same forensic interviewer, Ms. Runyon, were inadmissible because the child's statements were made "for purposes of proceeding against him in the abuse and neglect matter, not for purposes of medical treatment." *Id.* at *3. Relying, in part, on *Pettrey*, we found that the child's statements were admissible under Rule 803(4) of the West Virginia Rules of Evidence. *Id.* First, the child had been referred to the CAC at Women and Children's due to her disclosures of sexual abuse, thereby satisfying the first part of the test requiring that the statement be made for medical diagnosis or treatment. *Id.* Additionally, we observed that Ms. Runyon's forensic interview "was the first step in a two-step process, whereby she collected information regarding possible abuse so that a medical professional could thereafter

conduct an examination based on the child's disclosures."[3] *Id.* at *4. Further, because the circuit court ordered continued therapy for the child, it was clear "that the ultimate goal of the child's interview was continued treatment for the effects of her abuse." *Id.*

Just as occurred in *B.M.*, S.C. was referred to the CAC at Women and Children's following her disclosures of sexual abuse, and Ms. Runyon's interview was the first step in a process designed to determine the most appropriate course of action for S.C. from the "array of services" offered by the CAC. S.C.'s motive in submitting to an interview by Ms. Runyon was clearly consistent with the purposes of promoting treatment, thereby satisfying the first prong of the test. In this case, Ms. Runyon determined that the appropriate treatment should include an examination by a pediatrician.[4] In satisfaction of the second prong of the test, Ms. Runyon detailed that her interviews are used for treatment purposes and that pediatricians rely on her interviews in conducting their own examinations. Accordingly, we cannot say that the circuit court erred by admitting S.C.'s interview because it was not taken for a strictly investigatory or forensic purpose.

Concerning petitioner's argument that the interview should have been excluded under Rule 403 of the West Virginia Rules of Evidence,[5] we note that petitioner failed to object on that ground. We have repeatedly reminded litigants that, "[t]o preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert a circuit court to the nature of the claimed defect." *State v. Sites*, 241 W. Va. 430, 438, 825 S.E.2d 758, 766 (2019) (citation omitted). And, "'[o]ne of the most familiar procedural rubrics in the administration of justice is the rule that the failure of a litigant to assert a right in the trial court likely will result' in the imposition of a procedural bar to an appeal of that issue." *State v. Miller*, 194 W. Va. 3, 17, 459 S.E.2d 114, 128 (1995). Because petitioner failed to object on this ground at trial, we decline to address his argument on appeal. *See State v. Simons*, 201 W. Va. 235, 239, 496 S.E.2d 185, 189 (1997) (citation omitted) ("This Court has firmly established that '[w]here objections were not shown to have been made in the trial court, and the matters concerned were not jurisdictional in character, such objections will not be considered on appeal.'").

---

[3] We also acknowledged that, while Ms. Runyon did not engage in play therapy, "she was a forensic counselor trained in the process of interviewing victims of sexual abuse for purposes of treatment." *B.M.*, 2017 WL 2628569 at *4.

[4] Petitioner argues that a singular examination does not constitute "medical treatment" but, rather, a mere "medical action." Aside from highlighting that ongoing treatment was prescribed in other cases, petitioner does not demonstrate that ongoing treatment is a requisite for admission under the medical diagnosis or treatment exception. Indeed, the test for admission of a statement under this exception requires no consideration of the actual treatment prescribed or diagnosis rendered. *See Edward Charles L.*, 183 W. Va. at 644, 398 S.E.2d at 126, syl. pt. 5 (requiring consideration of the declarant's motive and whether the content of the statement is such that is reasonably relied in diagnosing or treating).

[5] Under Rule 403 of the West Virginia Rules of Evidence, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

In petitioner's second assignment of error, he argues that the inclusion of both petitioner's and S.C.'s birthdates in the indictment constitutes plain error. Petitioner acknowledges that he did not raise this objection below, but he claims that the inclusion of these birthdates amounted to plain error because the jury, which was provided with the indictment, was absolved of the necessity to find that petitioner was over the age of fourteen and S.C. under the age of twelve in determining whether he was guilty of first-degree sexual assault and first-degree sexual abuse. The State, rather than the jury, "became the '[f]inder of [f]act,'" petitioner argues.

"To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects of the fairness, integrity, or public reputation of the judicial proceedings." *Miller*, 194 W. Va. at 7, 459 S.E.2d at 118, syl. pt. 7. For error to be "plain," it "must be 'clear' or 'obvious.'" *Id.*, syl. pt. 8, in part. And, "[t]o affect substantial rights means the error was prejudicial. It must have affected the outcome of the proceedings in the circuit court, and the defendant rather than the prosecutor bears the burden of persuasion with respect to prejudice." *Id.*, syl. pt. 9, in part.

Petitioner has not demonstrated that providing the jury with a copy of the indictment, which included the birthdates of both petitioner and his victim, amounts to error. But even if we were to assume that it was erroneous, petitioner cannot demonstrate that he was prejudiced. At trial, S.C. testified that she was ten years old and that her abuse by petitioner started when she was approximately five years old. Petitioner testified that he was sixty-four years old at the time of trial. The court instructed the jury that the indictment is "a mere accusation or charge made against the defendant and it is not itself any evidence of guilt." The court further instructed the jury as to what it must find to support a conviction of first-degree sexual assault and first-degree sexual abuse, including the ages of petitioner and his victim. Finally, in the State's closing argument, it argued to the jury that the age elements had been satisfied and highlighted the evidence presented in support of those elements. Thus, the State was not absolved of the requirement to prove petitioner's and his victim's ages, and sufficient evidence of these elements was presented at trial such that petitioner suffered no prejudice.

In petitioner's third and final assignment of error, he argues that West Virginia Code § 61-8D-5 deprives a defendant of due process and the right to a fair trial by an impartial jury and is, therefore, unconstitutional. West Virginia Code § 61-8D-5(a) provides that,

> [i]n addition to any other offenses set forth in this code, the Legislature hereby declares a separate and distinct offense under this subsection, as follows: If any parent, guardian or custodian of or other person in a position of trust in relation to a child under his or her care, custody or control, shall engage in or attempt to engage in sexual exploitation of, or in sexual intercourse, sexual intrusion or sexual contact with, a child under his or her care, custody or control, *notwithstanding the fact that the child may have willingly participated in such conduct, or the fact that the child may have consented to such conduct* or the fact that the child may have suffered no apparent physical injury or mental or emotional injury as a result of such conduct, then such parent, guardian, custodian or person in a position of trust shall be guilty of a felony and, upon conviction thereof, shall be imprisoned in a correctional facility not less than ten nor more than twenty years, or fined not less than $500 nor

more than $5,000 and imprisoned in a correctional facility not less than ten years nor more than twenty years.

(Emphasis added.)

Petitioner argues that the sexual offenses set forth in West Virginia Code § 61-8D-5(a) are designated as misdemeanor or felony offenses in Article 8B of Chapter 61. But, under Article 8B, "lack of consent" is an element of the crimes set forth, whereas "lack of consent" is specifically excluded as an element of West Virginia Code § 61-8D-5(a). Petitioner states that West Virginia Code § 61-8D-5(a) is, therefore, "easier to prove." Petitioner also claims that a defendant charged with committing both a crime enumerated in Article 8B and West Virginia Code § 61-8D-5(a) is put "in a no-win situation" because, irrespective of whether the State can prove a lack of consent, the defendant will be found guilty. "This is a total deprivation of the defendant's due process rights and a trial with a fair and impartial jury," petitioner claims, and he supports his claim by reference to the rule of statutory construction that certain statutes be read in pari materia. *See* syl. pt. 5, *Fruehauf Corp. v. Huntington Moving & Storage Co.*, 159 W. Va. 14, 217 S.E.2d 907 (1975) ("Statutes which relate to the same persons or things, or to the same class of persons or things, or statutes which have a common purpose will be regarded in Pari materia to assure recognition and implementation of the legislative intent. Accordingly, a court should not limit its consideration to any single part, provision, section, sentence, phrase or word, but rather review the act or statute in its entirety to ascertain legislative intent properly.").

Petitioner offers only bald assertions of a due process violation or deprivation of a fair and impartial jury. Neither his allegation that West Virginia Code § 61-8D-5(a) is somehow "easier to prove" nor his citation to a canon of statutory construction suffice to demonstrate the constitutionality issues he claims. Moreover, to the extent that petitioner implies a double jeopardy violation by arguing that West Virginia Code § 61-8D-5(a) incorporates sex crimes criminalized in other statutes but omits the element of lack of consent, we held, in part, in syllabus point 9 of *State v. Gill*, 187 W. Va. 136, 416 S.E.2d 253 (1992), that "the legislature has clearly and unequivocally declared its intention that sexual abuse involving parents, custodians, or guardians, W.Va.Code, 61-8D-5, is a separate and distinct crime from general sexual offenses, W.Va.Code, 61-8B-1, *et seq.*, for purposes of punishment." Thus, separate sentences for both the crime of sexual abuse by a parent, guardian, custodian, or a person in a position of trust to a child and a crime found within Chapter 61, Article 8B are permissible. *Gill*, 187 W. Va. at 144, 416 S.E.2d at 261. Accordingly, this assignment of error lacks merit.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** October 13, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison