500 S.E.2d 552

**KEITH ALLEN A., Appellee,**

v.

**JENNIFER J.A. (A.), Appellant.**

No. 24157.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 10, 1997.

Decided Dec. 17, 1997.

738

Andrew S. Nason, Pepper & Nason, Charleston, for the Appellee.

Robert S. Baker, Beckley, for the Appellant.

PER CURIAM:[1]

Ms. Jennifer J.A. (hereinafter "Appellant") appeals the denial, in the Circuit Court of Lincoln County, of her motion to restrict visitation where sexual abuse has been alleged. We affirm the decision of the lower court and remand with directions.

## I.

The Appellant and Appellee Mr. Keith A.A. (hereinafter "Appellee") were divorced in 1985. The divorce order granted custody of the parties' child, Brandon, born on June 17, 1985, to the Appellant, with reasonable visitation to the Appellee. The visitation apparently proceeded without incident from 1985 through 1990. On March 11, 1990, however, subsequent to a visit with the Appellee father, Brandon, then age four, and his half-brother Timothy Shane[2] reported sexual abuse by the Appellee's father, Lloyd A.

On March 12, 1990, the Appellant took the younger child, Timothy, to a physician for an examination. The physician then reported the incident to the office of Child Protective Services in Hamlin, West Virginia. On March 13, 1990, the Appellant took the older child, Brandon, to the physician for an examination. According to the Appellant, while Brandon was waiting in the doctor's office for his examination, his grandfather, Lloyd A., allegedly entered the room, grabbed Brandon, and threatened him.

On March 13, 1990, the Appellant contacted Child Protective Services and the Lincoln County Primary Care Center regarding the allegations of abuse. While Brandon initially indicated that his grandfather had touched his "pee-pee," in a March 14, 1990, interview with Child Protective Services social worker Ruth Wade, Brandon indicated that another individual, Papa Harlan Adkins, an elderly friend of the Appellant, had placed Vaseline on his bottom. Ms. Wade apparently reported the allegations to the West Virginia State Police, but no further investigation was made.

Based upon the allegations of sexual abuse, the Appellant insisted that the Appellee prevent visitation between the children and Lloyd A. Upon the failure of the Appellee to provide such assurance, the Appellant refused to allow the Appellee to visit the children. Consequently, the Appellee, on Au-

---

1. We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley,* 188 W.Va. 197, 201 n. 4, 423 S.E.2d. 600, 604 n. 4. (1992) ("Per Curiam opinions ... are used to decide only the specific case before the Court; everything in a *per curiam* opinion beyond the syllabus point is merely *obiter dicta* .... Other courts, such as many of the United States Circuit Court of Appeals, have gone to non-published (not-to-be-cited) opinions to deal with similar cases. We do not have such a specific practice, but instead use published per curiam opinions. However, if rules of law or accepted ways of doing things are to be changed, then this Court will do so in a signed opinion, not a per curiam opinion.")

2. Timothy Shane, born on August 29, 1987, was two years old at the time of the alleged abuse. Although Timothy regularly stayed with Brandon when Brandon visited the Appellee, Timothy is not the son of the Appellee. The parties agree that the lower court order and this appeal do not affect Timothy.

gust 13, 1990, petitioned the lower court for visitation and requested a change of custody due to the Appellant's interference with the previous custody arrangements. On August 20, 1990, prior to the hearing on that petition, Brandon was interviewed by Eila Phailbus of the Prestera Mental Health Center in Huntington. Brandon indicated that Papaw (Lloyd A.) had touched his "pee-pee" and that "Papaw said Mommy would die if I tell her about Papaw touching my peepee."[3] Ms. Phailbus recommended individual and family counseling for Brandon to evaluate the allegations of sexual abuse.

In October 1990, the Appellant permitted the Appellee to visit Brandon and Timothy. After such visitation, the children once again reported continued sexual abuse. A hearing on the Appellee's motion for a change in custody was held on November 1, 1900, before the family law master. At that hearing, the Appellant testified that she had removed a pubic hair from Timothy's anal region. That hair was allegedly placed in a jar in a locked cabinet in the family law master's office. Based upon the allegations of sexual abuse, the family law master ordered supervised visitation between the father, children, and paternal grandparents. The paternal grandmother was designated as the supervisor for such visitation. The family law master further requested the prosecuting attorney's office to conduct an investigation into the allegations of abuse.[4]

Upon the direction of the family law master, psychological examinations of the children, parents, and paternal grandfather were conducted in May and June, 1991, by Barbara Tinsman, M.A., a licensed psychologist employed by Family Services, Inc., in Huntington, West Virginia. During the examinations, the children reported the instances of sexual abuse, but Ms. Tinsman concluded that she was unable to draw any definite psychological conclusions due to the time

that had elapsed between the alleged instances of abuse and her inquiries. Ms. Tinsman administered personality profiles developed by the Minnesota Multiphasic Personality Inventory (MMPI), and concluded that Lloyd A.'s profile was "most unusual" and that "it would not be considered highly unusual that such a person could quite convincingly lie about their involvement in child abuse." Ms. Tinsman concluded that Lloyd A. should not have any contact with the children except under supervision.

During a September 5, 1991, family law master hearing on the issue of visitation, the Appellant reiterated that while she did not wish to deprive the Appellee father of visitation, she did desire to protect the children from the paternal grandfather. As a result of the September 5, 1991, hearing, a September 16, 1991, order permitted the Appellee to conduct visitation, with the following conditions: (1) that there be no further accusations of any improper conduct, (2) that the grandparents were out of the area and that there be no contact with the grandparents or their residence, and (3) that the Appellee provide transportation. The family law master further directed that Brandon and Timothy undergo counseling.

Subsequent to a September 22, 1991, visit with the Appellee, the children again reported sexual abuse.[5] On September 23, 1991, this allegation of abuse was communicated to Child Protective Services. Dr. Kathleen Previll, a pediatrician with the Department of Pediatrics of West Virginia University's Health Sciences Center, Charleston Division, evaluated the children on October 23, 1991, and concluded that Brandon was the victim of sexual abuse. Dr. Previll noted a fissure or tear in Brandon's anal ring and redness at two points along the anal ring. She reported, "I would highly suspect that this child has been a victim of sexual abuse." Although Timothy's examination was normal,

---

3. The case manager at Prestera Center indicated that Brandon had been at Prestera Center on April 18, 1988, for an intake interview for the treatment of night terrors. He did not return for a follow-up interview.

4. Criminal charges filed against the Appellee and his parents in 1991 were later dismissed upon

the grand jury's failure to return an indictment in January 1992.

5. A law-enforcement investigation of this particular allegation indicated that the Appellee had taken the children to the home of the Appellee's sister in Ohio for the weekend. The children had been alone with Lloyd A. on September 22, 1991.

Dr. Previll explained that a normal examination does not necessarily indicate that no abuse has occurred.

In counseling sessions[6] initiated in November 1991 with Family Services of the Kanawha Valley and continuing to March 17, 1992, Brandon and Timothy continued to recount instances of sexual abuse and indicated that the Appellee had also participated in the abuse. In a report dated March 19, 1992, Peggy Dennison, a counselor with Family Services, reported that Brandon had related an incident in which his father had touched his penis and butt. Brandon further related that he was forced to perform oral sex on the father and that he was touched by both his paternal grandparents, Lloyd A. and Ouida A. Both children reported being held down and threatened not to tell anyone about the abuse.

The Appellee received counseling conducted by Tad Vickers, a counselor and physician's assistant employed with MacCallum and Associates of Charleston, West Virginia.[7] Mr. Vickers testified during a November 29, 1993, hearing before the family law master that he believed that the Appellee was not a danger to his children. He further explained that the allegations of abuse could be the result of "coaching," mistake, or misunderstanding. Mr. Vickers did not view the videotape of Brandon's allegations; nor did he interview Brandon or Timothy.

During 1994 interviews, psychologist Robert G. Martin of Lincoln County was consulted by attorneys for each of the parties. Mr. Martin was provided with copies of the reports of the previous psychological assessments, the medical reports, and a videotape of Brandon's statements. Subsequent to his review of these documents, Mr. Martin reported that he found reason to doubt the truth of the boys' allegations. In a letter to the family law master dated March 18, 1994, Mr. Martin indicated that there were "very plausible alternative explanations for the allegations...." Mr. Martin suggested that Brandon's complaints regarding pain in the rectal area could be attributed to chronically poor hygiene which was then "magnified" as the story was retold. Mr. Martin was unable to offer an alternative explanation, however, for the anal fissures observed by Dr. Previll.

Subsequent to a evidentiary hearing in May 1994, the family law master issued her recommended decision on February 8, 1995. The family law master concluded that the evidence regarding the Appellee's alleged abuse was inconclusive.[8] She found that the "preponderance of the evidence"[9] did not support a finding that the Appellee physically harmed or sexually molested either Brandon, his natural son, or Timothy, Brandon's half-brother. The family law master also indicated concern "about the emotional stability of

6. While the parties have informed the Court that the Appellee and Brandon have not had regular visitation since 1991, the reason for the lack of visitation is unclear. The family law master order in effect from 1991 to 1995 permitted visitation between the Appellee and Brandon. The Appellee's brief states that his last regular visitation was in September 1991, after which the Appellant once again accused the Appellee and his parents of sexual abuse.

7. According to the Appellant, Mr. Vickers is a master's level counselor. The duration of the counseling or the number of visits between Mr. Vickers and the Appellee is unclear from the record.

8. The family law master found the evidence inconclusive based upon the variance in the statements of the boys throughout the litigation. The family law master found that Brandon's "statement has changed drastically during the protracted course of this litigation." For instance, as recounted above, the first allegation of abuse

centered upon "Papa Harlan," a friend of the Appellant, as the perpetrator of the abuse. The story then expanded to include the Appellee's father, and by the time Brandon received counseling from Family Services in Charleston, the list of perpetrators included the Appellee and the Appellee's parents. The family law master notes that in the interview with Ms. Wade, referenced above, "several times during the interview the mother tries to focus the child's attention on Lloyd A., and the child does not name Mr. A. As the perpetrator of the abuse. It is only the mother at that point who names Lloyd A. As the abuser of the child."

9. The Appellant did not specifically assign error to the family law master and lower court's reference to "preponderance of the evidence," rather than credible evidence of sexual abuse. The Appellant did, however, discuss the distinction between the credible evidence standard of proof and the standard applied by the family law master and lower court, as more fully discussed subsequently in this opinion.

the mother of the child, Jennifer A." "Her description in her testimony of how she learned that her child had allegedly been abused was disjointed and confusing. Her reluctance to be concerned over her son's statement the 'Papaw Harlan' had abused him is unusual." The family law master, based upon her concerns about the Appellant, ordered the Appellant to participate in counseling "in order to help her deal with the issues involved in this recommendation . . . ."

The family law master also recommended joint counseling for the Appellee and Brandon, "with the purpose of that counseling program being to reunify the parent-child bonds, which have been strained severely due to these allegations." Pursuant to her recommendation, after six months of counseling, visitation between the Appellee and Brandon outside the confines of the counseling sessions could begin, limited to two hours per weekend in public buildings, restaurants, or parks. After three months of such public visitation, the visitation could progress to two hours per weekend at the home of the Appellee. After three more months of two-hour visitation at the Appellee's home, the visitation could increase to one twenty-four hour period per weekend. The family law master also indicated that the children were not to be left alone with the paternal grandparents at any time; nor were they to be permitted to have any contact with Harlan Adkins.

On October 18, 1996, the circuit court affirmed the decision of family law master, and the Appellant filed her petition for appeal with this Court on February 24, 1997, alleging that the circuit court's grant visitation, gradually becoming unsupervised, to the Appellee is unjustified. The Appellant maintains that the record contains sufficient and credible evidence of sexual abuse, necessitating the deprivation, or at the very least, the supervision of the Appellee's visitation with Brandon.

On July 3, 1997, the Appellant requested this Court to stay the lower court's order. In her motion, the Appellant explained that the counseling ordered by the lower court had not yet begun, based upon the parties inability to find an "agreeable counselor who is willing to take on this matter." This Court granted the stay of the lower court's order on July 15, 1997.

## II.

■ The allegations of sexual abuse in this matter arose in March 1990, almost eight years ago, and Brandon is presently twelve years of age. The inadequacy of the court system in addressing these difficult issues effectively and in a timely manner is dramatically demonstrated in this case. With this aggravated procedural history in mind, the request presently before this Court presents the simple question of whether the visitation provided to the Appellee should be supervised or restricted, for some specified period, based upon the myriad of sexual abuse allegations.

■ In syllabus point one of *Burks v. McNeel*, 164 W.Va. 654, 264 S.E.2d 651 (1980), we explained that "[i]n reviewing the judgment of the lower court this Court does not accord special weight to the lower court's conclusions of law, and will reverse the judgment below when it is based on an incorrect conclusion of law." In syllabus point four of *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996), we specified that we review "the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed de novo."

■ We have also explained that certain prerequisites must exist to permit an order of supervised visitation. In *Mary D. v. Watt*, 190 W.Va. 341, 348, 438 S.E.2d 521, 528 (1992) and *Carter v. Carter*, 196 W.Va. 239, 470 S.E.2d 193 (1996), we specified guidelines for the managing these difficult cases in which allegations of sexual abuse have arisen. In syllabus point five of *Carter*, we explained: "In visitation as well as custody matters, we have traditionally held paramount the best interests of the child." *Id.* at 241, 470 S.E.2d at 195. We reasoned that "[t]he best interests of the children should determine the pace of any visitation modification to assure that the children's emotional and physical well being is not harmed." 196 W.Va. at 246,

470 S.E.2d at 200. In syllabus point three of *Carter*, we stated:

> Because of the extraordinary nature of supervised visitation, such visitation should be ordered when necessary to protect the best interests of the children. In determining the best interests of the children when there are allegations of sexual or child abuse, the circuit court should weigh the risk of harm of supervised visitation or the deprivation of any visitation to the parent who allegedly committed the abuse if the allegations are false against the risk of harm of unsupervised visitation to the child if the allegations are true.

Syllabus point four continued:

> If the protection of the children provided by supervised visitation is no longer necessary, either because the allegations that necessitated the supervision are determined to be without "credible evidence" (*Mary D. v. Watt*, 190 W.Va. 341, 348, 438 S.E.2d 521, 528 (1992)) or because the noncustodial parent had demonstrated a clear ability to control the propensities which necessitated the supervision, the circuit court should gradually diminish the degree of supervision required with the ultimate goal of providing unsupervised visitation. The best interests of the children should determine the pace of any visitation modification to assure that the children's emotional and physical well being is not harmed.

 In *Mary D.*, we emphasized that the structure of supervision must be designed for the protection of the child's physical and emotional well-being. We also addressed the issue of a father's acquittal on criminal charges of sexual abuse and concluded that "being found 'not guilty' under the criminal standard of 'beyond a reasonable doubt' will not necessarily ease the emotional and psychological trauma, if any, suffered by the children if visitation, even if supervised, were to continue." 190 W.Va. at 347, 438 S.E.2d at 527. Justice McHugh enumerated specific guidelines for the development of a safe and secure atmosphere in which supervised visitation, where appropriate, may be exercised. In syllabus point three of *Mary D.*, we stated as follows:

> Where supervised visitation is ordered pursuant to W. Va.Code, 48–2–15(b)(1) [1991], the best interests of a child include determining that the child is safe from the fear of emotional and psychological trauma which he or she may experience. The person(s) appointed to supervise the visitation should have had some prior contact with the child so that the child is sufficiently familiar with and trusting of that person in order for the child to have secure feelings and so that the visitation is not harmful to his or her emotional well being. Such a determination should be incorporated as a finding of the family law master or circuit court.

In syllabus point two of *Mary D.*, we explained:

> Prior to ordering supervised visitation pursuant to W.Va.Code, 48–2–15(b)(1) [1991], if there is an allegation involving whether one of the parents sexually abused the child involved, a family law master or circuit court must make a finding with respect to whether that parent sexually abused the child. A finding that sexual abuse has occurred must be supported by credible evidence. The family law master or circuit court may condition such supervised visitation upon the offending parent seeking treatment. Prior to ordering supervised visitation, the family law master or circuit court should weigh the risk of harm of such visitation or the deprivation of any visitation to the parent who allegedly committed the sexual abuse against the risk of harm of such visitation to the child. Furthermore, the family law master or circuit court should ascertain that the allegation of sexual abuse under these circumstances is meritorious and if made in the context of the family law proceeding, that such allegation is reported to the appropriate law enforcement agency or prosecutor for the county in which the alleged sexual abuse took place. Finally, if the sexual abuse allegations were previously tried in a criminal case, then the transcript of the criminal case may be utilized to determine whether credible evidence exists to support the allegations. If the transcript is utilized to determine that credible

evidence does or does not exist, the transcript must be made a part of the record in the civil proceeding so that this Court, where appropriate, may adequately review the civil record to conclude whether the lower court abused its discretion.

We recognized in *Mary Ann P. v. William R. P., Jr.*, 197 W.Va. 1, 475 S.E.2d 1 (1996), that visitation could be totally suspended in certain situations, at least until the family underwent therapy. In *Mary Ann P.*, we determined that the record before us was "clear that forced visitation at this time would be detrimental to the children and futile on the defendant's behalf without professional intervention." 197 W.Va. at 8, 475 S.E.2d at 8. In *Mary Ann P.*, we also authorized the circuit court to determine the moment at which supervised visitation should resume and to "set forth a specific visitation schedule that takes into account the best interest of the children and the defendant's interest in attaining a close relationship with his sons." 197 W.Va. at 8, 475 S.E.2d at 8 (citing *Weber v. Weber*, 193 W.Va. 551, 457 S.E.2d 488 (1995); W. Va.Code, 48–2–15(b)(1993)).

In *In re Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991), we stated:

> In the difficult balance which must be fashioned between the rights of the parent and the welfare of the child, we have consistently emphasized that the paramount and controlling factor must be the child's welfare. "[A]ll parental rights in child custody matters," we have stressed, "are subordinate to the interests of the innocent child." *David M. [v. Margaret M.]*, [182 W.Va. 57, 60,] 385 S.E.2d [912] at 916 [ (1989) ].

185 W.Va. at 629, 408 S.E.2d at 381.

In *State ex rel. George B.W. v. Kaufman*, 199 W.Va. 269, 483 S.E.2d 852 (1997), we explained that "[i]t is a rare instance in which a parent should be denied all contact with a child. An essential element of our cases involving allegations of abuse by a parent is the necessity for the family law master or circuit court to hold hearings to ascertain the most viable approach to the resolution of the difficult issues which will inevitably be inherent in such matters."

In the present case, the initial allegations were advanced almost eight years ago. The case is also complicated by the disappearance of several key components of evidence. The video allegedly portraying Brandon's own presentation of the allegations of sexual abuse is missing, and the pubic hair found on Brandon and given to the police on January 3, 1991, is also missing. No testing of the hair was ever done.

The guardian ad litem for Brandon recommends reversal and remand for further hearing and reopening for services to this family. The guardian ad litem also recommends that an abuse and neglect petition be filed, that a prosecutor be appointed, that Gary McMullen of Cabell County Child Protective Services be appointed to oversee the Lincoln County Child Protective Services worker, that Dr. Paul Mulder of Affiliates in Psychology and Therapy, Inc., perform psychiatric and psychological evaluations of the parties, including Brandon and the spouses of the parties, and that visitation be stayed until the matter has been explored by an expert regarding the effects visitation may have on Brandon.

The Appellee has not had visitation with Brandon since 1991, and Brandon has allegedly informed the guardian ad litem that he fears his father and does not wish to see him. Brandon began his first year of junior high school in the fall of 1997, and he is allegedly experiencing difficulty with poor grades and minor disruptive behaviors. Otherwise, according to the report of the guardian ad litem, Brandon is progressing well. He enjoys the outdoors and animals and speaks well with adults. The guardian ad litem concludes:

> It appears that a situation existed in the past and presently a situation exists wherein the children could benefit from services to them and to the family. The record clearly reflects that sexual abuse occurred. The problem is no one truly can ascertain who the perpetrator was. However, because of the time span and the child's feelings, reunification between the child and father may no longer be in the child's best interest.

The guardian requests this Court to remand the matter for further hearing and for an evaluation by the Department of Health and Human Resources.

 From the record before us, it appears that the investigation of these allegations of sexual abuse was inadequately performed. No petition was ever filed by the Department of Health and Human Resources in Lincoln County, and the Department's involvement was apparently erratic.[10] In syllabus point two of *Boarman v. Boarman,* 190 W.Va. 533, 438 S.E.2d 876 (1993), we explained as follows:

> When serious allegations of child abuse or neglect are made in a custody case, the family law master and circuit judge should direct the Department of Health and Human Resources to intervene and conduct home studies and the court should make full inquiry into these allegations. Furthermore, where serious allegations of abuse and neglect arise, the protections afforded children under abuse and neglect law should apply.

The passage of time, the misplacement of essential elements of evidence, and the seeming inability of child protective services to achieve a timely resolution have rendered our decision very difficult. The most compelling evidence of sexual abuse is contained in the report of Dr. Kathleen Previll, finding fissures in Brandon's anal region highly suggestive of sexual abuse. The lower court's final order simply states that "[w]hile an anal fissure could be indicative of sexual abuse, anal fissures can result from many causes." Such conclusion is not supported by the medical testimony of Dr. Previll and is inconsistent with her findings.

The family law master and the lower court found that the "preponderance of the evidence" did not support a finding of abuse by any alleged perpetrator. As we explained in *Mary D.,* the proper standard of proof required in determining whether a child has been sexually abused, for purposes of limiting visitation, is not clear and convincing.

190 W.Va. at 348, 438 S.E.2d at 528. Nor is it the preponderance of evidence. Rather, "*credible evidence* of such sexual abuse allegations is all that is necessary for a family law master of circuit court to order supervised visitation." *Id.* Despite the utilization of the incorrect standard, the family law master and circuit court did order supervised visitation and set forth precise intervals during which supervised counseling sessions should occur, moving toward reunification between Brandon and his father, and gradually permitting unsupervised visitation.

The passage of time since the initial allegations of abuse, however, exacerbate the difficulty of this case. In the present case, as in *Carter,* the "passage of time and our lack of knowledge about recent events ..." compels additional inquiry into the allegations and the need for supervised visitation with the alleged perpetrators of the abuse. *Carter,* 196 W.Va. at 246, 470 S.E.2d at 200. The Appellee urges this Court to permit him to participate in the six-month counseling plan delineated by the family law master and circuit court. As we have consistently stated, as outlined extensively above, the best interests of the child must guide the determination of visitation modifications, with the child's emotional and physical well-being playing a central role in that determination.

Based upon our review of the record and the arguments of counsel, we find that despite the lower court's use of the wrong standard, the graduated schedule of reconciliation counseling and supervised visitation, ultimately to culminate in unsupervised visitation, between the Appellee and Brandon, was warranted and appropriate under all the circumstances in the record, and the decision is affirmed. Due to the extended period of time since the last regular visitation between the Appellee and Brandon, however, the lower court should conduct an additional hearing on remand, prior to any unsupervised visitation, to determine whether the period of supervised visitation specified in the October 18, 1996, order should be extended. Fur-

---

**10.** Although numerous references are made throughout the record to involvement by the Department, it does not appear that the Department filed an abuse and neglect petition or otherwise made concrete conclusions despite the fact that they viewed the allegation as sufficient to contact to the State Police regarding the allegations of abuse.

thermore, the circuit court should direct as immediately as possible that the reconciliation counseling begin. Since the parties have been unable to agree, the circuit court should specify the name of the counselor, either the one suggested by the guardian ad litem or one chosen by the court. The court should make such further order as appropriate with regard to the payment for any such reunification counseling. If, at any point during the visitations, additional evidence of sexual abuse or other issues relevant to Brandon's best interests arise, the Appellant may move the lower court to alter the visitation schedule accordingly.

Affirmed and remanded with directions.