650 S.E.2d 243

**In re the Marriage of MISTY D.G., Petitioner Below, Appellee**

v.

**RODNEY L. F., Respondent Below, Appellant.**

**No. 33226.**

Supreme Court of Appeals of West Virginia.

Submitted April 4, 2007.

Decided June 13, 2007.

Steven K. Mancini, Southern West Virginia Law Clinic, Beckley, for the Appellee.

Stacey L. Daniel–Fragile, Fragile Law Office, Beckley, Guardian at Litem.

David S. Hart, Hayden & Hart, PLLC, Beckley, for the Appellant.

PER CURIAM:

This is an appeal by Rodney L.F. (hereinafter "Appellant") from an order of the Circuit Court of Raleigh County reversing a decision of the Family Court of Raleigh County in this child custody matter.[1]  The

---

1. We follow our traditional practice in cases involving sensitive facts and use initials to identify

Appellant contends that the lower court erred in concluding that the family court improperly considered inadmissible hearsay and expert witness opinion evidence in rendering its decision to grant the Appellant's petition for a modification of child custody. The Appellant further contends that even if the circuit court had been correct in its conclusion, the matter should have been remanded to the family court for a determination regarding whether sufficient evidence remained to grant the modification and whether the family court would permit the child to testify in light of the circuit court's ruling. Upon thorough review of the briefs, arguments, record, and applicable precedent, this Court reverses the decision of the Circuit Court of Raleigh County and remands this matter with directions that the November 18, 2005, order of the family court be reinstated.

### I.  Factual and Procedural History

The Appellant and Misty G. (hereinafter "Appellee") were divorced on August 21, 2003. The parties had one child, L.N.F., born on May 25, 1999. Pursuant to the divorce decree, primary custody of the child was granted to the Appellant. The parties exercised custodial time with their daughter without incident until November 20, 2003, at which time the Appellant filed a petition for modification and emergency relief, alleging that the child had been sexually abused by the Appellee's boyfriend, Thomas G.[2] The family court temporarily suspended the exercise of custodial rights by the Appellee until such time as a hearing could be held by the court and appointed Stacy Lynn Daniel–Fragile to serve as guardian ad litem for the child.

On January 16, 2004, the family court entered an order granting emergency relief and ordering the Department of Health and Human Resources, Child Protective Services, to investigate and determine whether supervised visitation could be arranged. The family court further ordered as follows: "The child is hereby referred for a sexual abuse

assessment by a suitably licensed sexual abuse counselor, Susan McQuaide, and the Department of Health and Human Resources is ordered to assist [the Appellant] ensuring that the child is suitably evaluated by the counselor identified by the Court herein."

On May 4, 2005, and September 8, 2005, the family court conducted hearings on the Appellant's petition. The guardian ad litem submitted a report indicating her conclusion that both the Appellee and Mr. G. had been deceitful concerning Mr. G.'s access to the child during the time in which the abuse allegedly occurred. Evidence at the family court hearing also included testimony by the Appellant indicating that the child had begun experiencing vaginal soreness and irritation upon returning from visits at the Appellee's home. The Appellant indicated that the child had also begun acting out in sexually inappropriate manners.[3]

Ms. McQuaide testified that she had counseled the child, that the child had identified Mr. G. as the perpetrator of the abuse, and that the child had explicitly described the elements of the sexual abuse. Based upon the evidence presented in the hearing, the family court found that the Appellee had demonstrated a complete unwillingness to protect the child from abuse by Mr. G. The family court specifically noted that the Appellee had married Mr. G. at a time when she was uncertain of the truth of the allegations of abuse; that the Appellee had not been truthful regarding Mr. G.'s access to her daughter; that the Appellee denied that there were wooded areas around her home where the abuse allegedly occurred; and that other family members had confirmed that such wooded areas did exist. The family court granted the Appellant's petition for modification and ordered that all future visitation between the child and the Appellee should occur under the supervision of the Women's Resource Center Supervised Visitation Program in Beckley, West Virginia.

the last names of the parties. *See In re Jeffrey R. L.,* 190 W.Va. 24, 435 S.E.2d 162 (1993).

**2.** During the pendency of this action, the Appellee married Mr. G.

**3.** The sexually inappropriate actions included attempting to take nude photographs of a child friend, inappropriate sexual touching of a child friend, and demonstration of sexual knowledge beyond that of a young child.

Upon the Appellee's appeal, the circuit court reversed the family court, finding that the family court had improperly considered expert opinion evidence from the child's counselor, Ms. McQuaide, and had applied an improper standard of proof in deciding the Appellant's petition. Specifically, the lower court found that the family court impermissibly permitted Ms. McQuaide to testify regarding whether Mr. G. had abused the child and improperly admitted Ms. McQuaide's testimony, as well as that of other family members, regarding statements the child had allegedly made.[4]

The lower court restored the schedule of visitation initially ordered upon the parties' divorce. The lower court did not remand the matter to the family court for a determination of whether the evidence properly admitted would have been sufficient to sustain the family court's modification of custody arrangements. The Appellant maintains that a remand would also have permitted the family court to reconsider its decision not to allow direct testimony from the child regarding the abuse, a decision initially made based upon the availability of the child's counselor to introduce evidence of the child's statements concerning the abuse.

On May 12, 2006, the lower court entered an order granting the Appellant's request for a stay of the lower court decision pending appeal to this Court.

## II. Standard of Review

■ In syllabus point one of *Staton v. Staton*, 218 W.Va. 201, 624 S.E.2d 548 (2005), this Court explained as follows:

"In reviewing a final order entered by a circuit judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the appli-

cation of law to the facts under an abuse of discretion standard. We review questions of law *de novo*." Syllabus, *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004).

In evaluating standards of proof, this Court also recognizes that the matter must be assessed within the context of a civil proceeding, rather than a criminal one. In *Sharon B.W. v. George B.W.*, 203 W.Va. 300, 507 S.E.2d 401 (1998), this Court addressed the evidentiary standards to be employed in determining whether a change in custody was necessary where a mother's boyfriend had allegedly sexually abused a child. This Court clearly articulated that the preponderance of the evidence was the appropriate standard to be utilized. 203 W.Va. at 303, 507 S.E.2d at 404. With these standards of review as guidance, we examine the arguments in this appeal.

## III. Discussion

The Appellant presents two assignments of error. First, the Appellant maintains that the lower court erred in finding that the family court had improperly relied upon inadmissible hearsay and expert witness testimony in rendering its decision. Second, the Appellant contends that even if such conclusion had been correct, the lower court should have remanded the matter to the family court for a determination of whether sufficient evidence remained to justify the grant of custody modification and whether the family court would reconsider its decision regarding presentation of testimony from the child. This Court's examination of the Appellant's contentions will focus upon three distinct issues of testimony admissibility: Ms. McQuaide's testimony regarding statements made to her by the child during the course of treatment; Ms. McQuaide's opinion regarding the identity of the perpetrator;

---

4. The circuit court, however, did find that Ms. McQuaide was qualified as an expert in the counseling of sexual abuse victims. The circuit court order explains as follows:

The record supports the conclusion that Ms. McQuaide has sufficient credentials within the field of counseling sexual offenders and sexual abuse victims. The Family Court was correct in recognizing Ms. McQuaide as an expert on the basis of her knowledge, skill, education

and training in the field of counseling of sexual abuse victims.

It appears, however, that the expert opinions offered by Ms. McQuaide were not within her field of counseling. She was permitted to offer an opinion that the Petitioner's husband had committed the acts of abuse. Her opinion on that point is not within her field of expertise, and it was error to admit it into evidence.

and family member testimony regarding statements made by the child.

█ A crucial component of every facet of this evaluation is the definition of hearsay as provided by Rule 801 of the West Virginia Rules of Evidence. Hearsay is defined therein as follows: "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." While hearsay is generally not admissible, it may be admissible if it is contained within one of the recognized exceptions. In syllabus point one of *State v. Maynard*, 183 W.Va. 1, 393 S.E.2d 221 (1990), this Court explained as follows:

> Generally, out-of-court statements made by someone other than the declarant while testifying are not admissible unless: 1) the statement is not being offered for the truth of the matter asserted, but for some other purpose such as motive, intent, state-of-mind, identification or reasonableness of the party's action; 2) the statement is not hearsay under the rules; or 3) the statement is hearsay but falls within an exception provided for in the rules.

### A. Testimony by Ms. McQuaide Regarding Statements of the Child

█ Pursuant to Rule 803(4) of the West Virginia Rules of Evidence, "[t]he following are not excluded by the hearsay rule, even though the declarant is available as a witness:"

> (4) Statements for purposes of medical diagnosis or treatment.—Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

*See also* Syl. Pt. 4, *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990) (restating that rule). In syllabus point five of *Edward Charles L.*, this Court explained as follows:

> The two-part test set for admitting hearsay statements pursuant to W.Va.R.Evid. 803(4) is (1) the declarant's motive in making the statements must be consistent with the purposes of promoting treatment, and (2) the content of the statement must be such as is reasonably relied upon by a physician in treatment or diagnosis.

The medical treatment exception to the hearsay rule, as it applies to psychological treatment of alleged victims of child abuse, has received considerable attention in recent years. The unique circumstances involved in such cases have prompted many states to extend the medical treatment exception to situations in which the alleged victim makes statements to a treatment provider regarding the identity of the abuser and information about the abuse. Such discussions are perceived as being pertinent to the treatment being undertaken. *See Eakes v. State*, 665 So.2d 852 (Miss.1995) (statement to physician as to identity of abuser of child sexual abuse victim admissible under medical treatment exception); *State v. Vosika*, 83 Or.App. 298, 731 P.2d 449 (1987) (allowed testimony of physician who reasonably relied on child sexual abuse victim's identification of her abuser as a family member in treating); *Goldade v. State*, 674 P.2d 721 (Wyo.1983), *cert. denied*, 467 U.S. 1253, 104 S.Ct. 3539, 82 L.Ed.2d 844 (1984) (statements by victim to nurse and a physician identifying defendant as abuser were admissible).[5]

Courts have observed that " 'testimony pertaining to the identity of the defendant and the nature of the sexual assault [are] wholly relevant and pertinent to proper diagnosis and treatment of the resulting physical and psychological injuries of sexual assault.

---

5. The fact that the treating entity is not a physician has not been a consistent determining factor in these analyses. *See Gohring v. State*, 967 S.W.2d 459, 461 (Tex.App.1998) (allowing play therapist to testify child was abused by her father); *Moyer v. State*, 948 S.W.2d 525, 527–28 (Tex.App.1997) (concluding statements made by patient to paramedic were admissible); *Macias v.*

*State*, 776 S.W.2d 255, 258–59 (Tex.App.1989) (statements made to psychologist admissible because they were made for purpose of medical diagnosis and treatment); *Torres v. State*, 807 S.W.2d 884, 886–87 (Tex.App.1991) (finding emergency room nurse could testify as to victim's statement even though nurse was also collecting evidence).

...' " *State v. Cruz*, 260 Conn. 1, 792 A.2d 823, 831 (2002) (quoting *State v. Kelly*, 256 Conn. 23, 770 A.2d 908, 928 (2001)). Statements presented under the medical treatment exception which identify the perpetrator of the sexual abuse are deemed allowable because "medical treatment" in sexual abuse cases entails emotional and psychological injuries and the necessity to protect the victim from the abuser. *United States v. George*, 960 F.2d 97, 99–100 (9th Cir.1992).[6]

■ Circumstances very similar to those encountered in the present case were addressed in the criminal context in *State v. Pettrey*, 209 W.Va. 449, 549 S.E.2d 323 (2001), *cert. denied*, 534 U.S. 1142, 122 S.Ct. 1096, 151 L.Ed.2d 994 (2002). In syllabus point nine of *Pettrey*, this Court explained as follows:

> When a social worker, counselor, or psychologist is trained in play therapy and thereafter treats a child abuse victim with play therapy, the therapist's testimony is admissible at trial under the medical diagnosis or treatment exception to the hearsay rule, West Virginia Rule of Evidence 803(4), *if the declarant's motive in making the statement is consistent with the purposes of promoting treatment* and the content of the statement is reasonably relied upon by the therapist for treatment. The testimony *is inadmissible if the evidence was gathered strictly for investigative or forensic purposes.*

209 W.Va. at 452, 549 S.E.2d at 326 (emphasis supplied); *see also State v. Shrewsbury*, 213 W.Va. 327, 329–30, 582 S.E.2d 774, 776–77 (2003). Applying that standard to the circumstances of the present case, Ms. McQuaide's testimony relating the child's statements would be admissible if the child's motive in making the statement was consistent with the purposes of promoting treatment and the content was relied upon by Ms. McQuaide. The testimony would be inadmissible if it was *gathered strictly* for investigative or forensic purposes.

■ This Court has thoroughly reviewed Ms. McQuaide's testimony, as contained in the video-taped transcript from the family court hearing. The transcript contains extensive discussion regarding the distinctions between forensic (investigative) and clinical (treatment) elements. Ms. McQuaide unequivocally stated that she worked in a dual capacity, initially evaluating the situation in a forensic manner in order to gather information necessary for evaluation and treatment and subsequently treating the child over the course of numerous counseling sessions. Thus, the information accumulated by Ms. McQuaide was not "gathered strictly for investigative or forensic purposes." *Pettrey*, 209 W.Va. at 452, 549 S.E.2d at 326. The child revealed intimate issues regarding the sexual abuse to her counselor, Ms. McQuaide, in the process of participating in ongoing treatment. The content of the child's statements was reasonably relied upon by Ms. McQuaide for treatment. Consequently, this Court finds that the requirements of *Pettrey* for the introduction of Ms. McQuaide's testimony regarding statements made to her by the child during counseling were satisfied.

The circuit court order acknowledged that *Pettrey* would permit the testimony "if the motive in making the statement is consistent with the purposes of treatment. . . ." However, the circuit court found that *Pettrey* would not permit introduction of this testimony because "the use made of the child's out-of-court statements . . . was to find that the child was sexually abused by the Petitioner's husband." The court concluded that it was therefore "clear that this evidence was considered not for purposes of treatment, but to support the finding of fact that the Petitioner's husband committed the sexual abuse that was alleged. This is an 'investigative or forensic' purpose forbidden by *Pettrey*."

■ We reverse the circuit court's finding that such testimony was inadmissible. The *Pettrey* standard requires an examination of the *child's motive in originally making* the statement. On the contrary, the circuit court

---

6. *See also State v. Gregory*, 78 N.C.App. 565, 338 S.E.2d 110, 112 (1985) (permitting testimony identifying perpetrator of sexual offenses, reasoning the physician "not only needed to know who the perpetrator was in order to plan for the psychological treatment of the victim, but also to comply with the North Carolina child abuse reporting and treatment statutes.").

examined the matter in terms of the *use ultimately made* of the child's statement.[7] By so examining the statement, the circuit court erroneously concluded that the testimony was inadmissible.

B. Ms. McQuaide's Opinion Regarding the Identity of the Perpetrator; Family Member Testimony Regarding Statements of the Child

■ This Court affirms the decisions of the lower court with regard to the inadmissibility of Ms. McQuaide's opinion that Mr. G. committed the abuse and the inadmissibility of the child's family members' testimony regarding statements of the child. The circuit court found that Ms. McQuaide[8] offered opinions beyond the field of counseling when she was permitted to offer her personal opinion that Mr. G. had perpetrated the abuse. Similarly, with reference to family members, the circuit court ruled that testimony by the child's family members regarding statements made by the child constituted inadmissible hearsay.

While we affirm the decisions of the circuit court that such testimony is inadmissible, we find that the family court's error in admitting such testimony was harmless and did not affect the ultimate outcome of this child custody modification matter. We observe that none of the family court's seventeen findings refers to opinion evidence offered by Ms. McQuaide regarding her personal conclusions about the identity of the perpetrator. Nor does the family court appear to rely upon family member testimony regarding the child's statements. The family court's ultimate alteration of custody is based upon the child's statements as properly revealed through her counselor, Ms. McQuaide; testimony regarding the child's physical condition; testimony regarding the child's knowledge and acting out of sexual activity; and testimony from the child's guardian ad litem.

Based upon our review of the evidence and the reasoning of both the family court and the circuit court, we conclude that the family court's error in admitting Ms. McQuaide's opinion that Mr. G. committed the offenses and in admitting the family members' hearsay testimony regarding statements of the child did not result in substantial injustice or prejudice to substantive rights. Therefore, we consider such error harmless. Rule 61 of the West Virginia Rules of Civil Procedure provides:

No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

Rule 103(a) of the West Virginia Rules of Evidence also provides that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . . ."

■ As this Court articulated in *State v. Bradshaw*, 193 W.Va. 519, 457 S.E.2d 456 (1995), *cert. denied, Bradshaw v. West Virginia*, 516 U.S. 872, 116 S.Ct. 196, 133 L.Ed.2d 131, "[t]he harmless error inquiry involves an assessment of the likelihood that the error affected the outcome of the trial." 193 W.Va. at 539, 457 S.E.2d at 476. Our conclusion that the admission of the evidence at issue was harmless is bolstered by the fact that this case was tried before the bench, rather than a jury. "Unlike a jury, a trial judge in a bench trial is presumed to know the law and to follow it and 'this presumption may only be rebutted when the record affirma-

7. As argued by the Appellant, the "Circuit Court incorrectly stated that the admissibility of the statements made by the child during sexual abuse counseling turned on the purpose for which the statements were offered into evidence, rather than the purpose for which the child was seeing the counselor in the first place."

8. The circuit court found that the record supported the conclusion of the family court that Ms. McQuaide had sufficient credentials to be recognized as an expert on the basis of her knowledge, skill, education, and training in the field of counseling sexual abuse victims.

tively shows otherwise.' " *People v. Thorne*, 352 Ill.App.3d 1062, 288 Ill.Dec. 513, 817 N.E.2d 1163, 1177 (2004) (quoting *People v. Mandic*, 325 Ill.App.3d 544, 259 Ill.Dec. 658, 759 N.E.2d 138, 141 (2001)).[9]

## IV. Conclusion

■ The jurisprudence of this state has invariably adhered to the policy that the best interests of the child must be the guiding force in any custody determination. The Legislature succinctly stated:

> The Legislature finds and declares that it is the public policy of this state to assure that the best interest of children is the court's primary concern in allocating custodial and decision-making responsibilities between parents who do not live together. In furtherance of this policy, the Legislature declares that a child's best interest will be served by assuring that minor children have frequent and continuing contact with parents who have shown the ability to act in the best interest of their children, to educate parents on their rights and responsibilities and the effect their separation may have on children, to encourage mediation of disputes, and to encourage parents to share in the rights and responsibilities of rearing their children after the parents have separated or divorced.

W.Va.Code § 48–9–101(b) (2001) (Repl.Vol. 2004). In advancement of this philosophy, this Court has explained that "[i]n visitation as well as custody matters, we have traditionally held paramount the best interests of the child." Syl. Pt. 5, *Carter v. Carter*, 196 W.Va. 239, 470 S.E.2d 193 (1996). In *Keith Allen A. v. Jennifer J.A.*, 201 W.Va. 736, 500 S.E.2d 552 (1997), this Court reiterated: " 'In

the difficult balance which must be fashioned between the rights of the parent and the welfare of the child, we have consistently emphasized that the paramount and controlling factor must be the child's welfare.' " 201 W.Va. at 744, 500 S.E.2d at 560 (quoting *In re Carlita B.*, 185 W.Va. 613, 629, 408 S.E.2d 365, 381 (1991)).[10]

■ With specific regard to the protection offered through the mechanism of supervised visitation, this Court has articulated the following at syllabus point three of *Carter*:

> Because of the extraordinary nature of supervised visitation, such visitation should be ordered when necessary to protect the best interests of the children. In determining the best interests of the children when there are allegations of sexual or child abuse, the circuit court should weigh the risk of harm of supervised visitation or the deprivation of any visitation to the parent who allegedly committed the abuse if the allegations are false against the risk of harm of unsupervised visitation to the child if the allegations are true.

196 W.Va. at 241, 470 S.E.2d at 195. Recognizing that the "best interests of the child are paramount," this Court explained its ultimate rationale very concisely in *In re Jason S.*, 219 W.Va. 485, 637 S.E.2d 583 (2006), by stating simply that "[i]f the allegations of sexual abuse are true, the risk of harm of allowing unsupervised visitation is much greater than any harm caused by limiting . . . visitation rights." 219 W.Va. at 492, 637 S.E.2d at 590.

■ Upon thorough review of this matter, this Court finds that the circuit court

**9.** Many courts have specified that there is a presumption that a judge, in reaching a verdict in a non-jury trial, has disregarded any improperly admitted evidence. *See State v. Clay*, 909 S.W.2d 711, 716 (Mo.App.1995); *State v. Rank*, 849 S.W.2d 230, 232–33 (Mo.App.1993). In *People v. Kriho*, 996 P.2d 158 (Colo.App.1999), the court explained that "[t]here is a presumption that all incompetent evidence is disregarded by the court in reaching its conclusions, and the judgment will not be disturbed unless it is clear that the court could not have reached the result but for the incompetent evidence." 996 P.2d at 172; *see also State v. Gutierrez*, 1 Haw.App. 268, 618 P.2d 315, 317 (1980) ("the normal rule is that if there

is sufficient competent evidence to support the judgment or finding below, there is a presumption that any incompetent evidence was disregarded and the issue determined from a consideration of competent evidence only.").

**10.** *See also* Syl. Pt. 3, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) ("Although parents have substantial rights that must be protected, the primary goal . . . in all family law matters . . . must be the health and welfare of the children."); *David M. v. Margaret M.*, 182 W.Va. 57, 60, 385 S.E.2d 912, 916 (1989) (The "child's welfare is the paramount and controlling factor in all custody matters.").

erred in reversing the holding of the family court. The family court correctly admitted the testimony of Ms. McQuaide regarding the statements made by the child during treatment. In evaluating the admissible evidence, this Court finds that the preponderance of the evidence supports the family court's conclusion that the child suffered sexual abuse perpetrated by Mr. G., now her mother's husband. Thus, the alteration in custody and supervised visitation ordered by the family court was necessary and justified by the evidence properly presented.

Based on the foregoing, the decision of the Circuit Court of Raleigh County is hereby reversed, and this matter is remanded with directions that the November 18, 2005, order of the family court be reinstated.

Reversed and remanded with directions.