# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

November 26, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**In Re: J.A., J.S.-1, & J.S.-2**

**No. 13-0704** (Kanawha County 11-JA-235 through 11-JA-241)

### MEMORANDUM DECISION

Petitioner Mother, by counsel Edward L. Bullman, appeals the Circuit Court of Kanawha County's June 13, 2013 order terminating her parental rights to J.A., J.S.-1, and J.S.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Michael L. Jackson, filed its response in support of the circuit court's order. The guardian ad litem, W. Jesse Forbes, filed a response on behalf of the children supporting the circuit court's order. Respondent J.S., the biological father of J.S.-2, has also filed a response supporting the circuit court's order, by counsel Sharon K. Childers. On appeal, petitioner alleges that the circuit court erred by: (1) finding clear and convincing evidence of abuse and neglect; (2) allowing the introduction into evidence recordings of the children's forensic interviews; (3) making general findings of abuse and neglect; (4) failing to dismiss the petition and remand the matter to family court; and (5) terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2011, the DHHR filed its initial abuse and neglect petition against petitioner. At the time, petitioner resided with her then-boyfriend, J.V. According to the initial petition, none of petitioner's children lived in the home at the time. Two children, J.S.-1 and J.S.-2, lived with their fathers while a third child, J.A., resided with her maternal grandmother. Petitioner was previously the subject of multiple Child Protective Services ("CPS") investigations that did not result in the filing of petitions, though J.A. did state that petitioner physically abused the children for having previously spoken to CPS. According to the petition, one father had witnessed petitioner pulling J.A.'s hair and hitting her in the face, and J.A. once overheard J.V.

---

[1] Because two children share the same initials, they will be referred to as J.S.-1 and J.S.-2 throughout this memorandum decision. Additionally, other children that are not petitioner's biological children were involved in the abuse and neglect proceedings below. Petitioner raises no argument in regard to these children, therefore, the Court will address only the circuit court's rulings in regard to J.A., J.S.-1, and J.S.-2.

say he was going to obtain a gun and shoot petitioner. Additionally, one of the boyfriend's children, K.V., witnessed petitioner put her hand over J.A.'s mouth to the point the child could not breathe.

As to the other children, it was alleged that J.S.-2 resided with his father after he was granted full custody pursuant to a family court order because of petitioner's medical neglect and J.V.'s physical abuse. J.S.-1 lived with his father after he was awarded full custody due to petitioner's homelessness. At the time, petitioner had unsupervised visitation with J.S.-1 on weekends. It was alleged that during visitation, the child witnessed abuse to J.V.'s children and domestic violence between petitioner and J.V., including an incident in which J.V. broke a telephone over petitioner's arm and she had to flee with the children to a motel. The petition further alleged that petitioner failed to provide the children with necessary food, clothing, supervision, and housing, and that she failed to provide financial support, thereby placing the children at risk for harm.

On December 15, 2011, the circuit court held a preliminary hearing and found probable cause existed to support the allegations in the petition. Prior to adjudication, the DHHR performed forensic evaluations with petitioner's daughter, J.A., as well as three of J.V.'s children. The circuit court then held an adjudicatory hearing on June 26, 2012, having previously continued an adjudicatory hearing from April of 2012. During the adjudicatory hearings the circuit court heard testimony from a CPS worker and the individual that performed the forensic evaluation of the children. The circuit court also accepted recordings of the forensic interviews into evidence. Additionally, testimony was provided by both petitioner and J.V., as well as K.S., the adult daughter of one of petitioner's prior husbands.

In March of 2013, the circuit court held a dispositional hearing and heard additional testimony from Dr. Timothy Saar who had performed petitioner's psychological evaluation. Further, a CPS worker testified that there were no services that could be offered to correct the conditions of abuse or neglect. At the conclusion of the hearing, the circuit court terminated petitioner's parental rights. Petitioner appeals to this Court.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's

account of the evidence is plausible in light of the record viewed in its entirety."
Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

Upon our review, the Court finds that the circuit court did not err in finding that the children were abused and neglected. Two of petitioner's assignments of error concern these findings and will be addressed together. Petitioner alleges that the circuit court erred in finding that clear and convincing evidence existed to support the findings of abuse and neglect and that the circuit court's findings on this issue lacked the requisite specificity. We have previously held that

"W.Va.Code[§] 49–6–2(c) [1980], requires the State Department of Welfare [now the Department of Health and Human Resources], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing proof.' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the State Department of Welfare is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 3, *In re Randy H.*, 220 W.Va. 122, 640 S.E.2d 185 (2006).

We find no error in regard to the circuit court's findings of abuse and neglect. While petitioner argues that the evidence was insufficient to support the circuit court's findings of abuse and neglect because the evidence below was conflicting and inconsistent, we disagree. Specifically, K.S. testified that she had previously witnessed petitioner strike J.A. and J.S.-1 in their faces, including an incident during which J.A.'s nose and mouth were injured and bleeding. Additionally, during their forensic interviews, the children disclosed physical abuse by petitioner, including being kicked and punched. Further, the children stated that petitioner and J.V. threatened to harm them if they disclosed the abuse.

We have previously held that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997). As such, we note that the circuit court was in the best position to weigh witness credibility, and we find no error in the findings of abuse and neglect to the children at issue. While it is true that the circuit court's adjudicatory order did not specifically identify what conduct constituted abuse and neglect, we decline to grant petitioner relief in this regard because of the overwhelming evidence supporting the circuit court's finding of abuse and neglect. This includes the specific evidence that petitioner physical abused the children at issue.

As to petitioner's assignment of error regarding the admission of the children's forensic interviews into evidence, the Court declines to address this argument. Petitioner urges this Court

to re-examine its prior holdings related to the admissibility of statements from children made to therapists in connection with abuse, arguing that the statements given in the forensic interviews below were made purely for investigatory purposes. *See* Syl. Pt. 4, *Misty D.G. v. Rodney L.F.*, 221 W.Va. 144, 650 S.E.2d 243 (2007). Upon our review, we decline to address this assignment of error because the record is clear that it was petitioner's counsel who submitted the recorded interviews for submission into evidence. "'In the exercise of its appellate jurisdiction, this Court will not decide nonjurisdictional questions which were not considered and decided by the court from which the appeal has been taken.' Syllabus Point 1, *Mowery v. Hitt*, 155 W.Va. 103, 181 S.E.2d 334 (1971)." Syl. Pt. 1, *Wang-Yu Lin v. Shin Yi Lin*, 224 W.Va. 620, 687 S.E.2d 403 (2009). Because petitioner failed to object to the introduction of these recorded interviews below, and, in fact, submitted the same for admission, the Court declines to address this assignment of error.

Petitioner asserts two assignments of error in regard to the termination of her parental rights, and the Court will address them together as each assignment of error asserts that the circuit court erred in failing to impose a less restrictive alternative at disposition. According to petitioner, instead of terminating her parental rights to all of the children, the circuit court could have granted an improvement period and ordered family counseling in order to address the issues of abuse and neglect. Alternatively, petitioner argues that the circuit court should have dismissed the proceedings against her as to J.S.-1 and J.S.-2 because the children had been returned to the legal custody of their respective fathers. According to petitioner, this would have allowed her to later petition the family court for modification of her parental rights upon a change in circumstances. The Court, however, finds no error in the circuit court's termination of petitioner's parental rights because there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse or neglect in the near future and termination was necessary for the children's welfare. Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are instructed to terminate parental rights upon these findings.

As set forth in West Virginia Code § 49-6-5(b)(3), there is no reasonable likelihood that a parent can substantially correct the conditions of abuse and neglect in the near future when the parent has failed to follow through with a family case plan or other rehabilitative efforts designed to reduce or prevent abuse. In this matter, the circuit court specifically found that petitioner had "accepted no responsibility for what has happened to [her] children, and [has] shown no inclination to correct the conditions and behaviors that led to the filing of the [p]etition in this matter . . . ." The record is clear that petitioner failed to acknowledge the underlying conditions of abuse and neglect, and on appeal she admits that she was unwilling to admit to the same. In fact, petitioner's argument on this issue is couched in terms of credibility and she argues that she could not acknowledge the abuse and neglect because the "allegations were not internally consistent with each declarant or between declarants."

Having already determined that the evidence was sufficient to support the circuit court's adjudication of the children as abused and neglected, the Court finds no merit in petitioner's argument on this point. The record is clear that petitioner physically abused the children and she

4

failed to acknowledge her role in the abuse during the proceedings below. We have previously held that

> "in order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense." *West Virginia Dept. of Health and Human Resources v. Doris S.*, 197 W.Va. 489, 498, 475 S.E.2d 865, 874 (1996).

*In re Kaitlyn P.*, 225 W.Va. 123, 126, 690 S.E.2d 131, 134 (2010). As such, we find no error in the circuit court's decision to proceed to termination of parental rights without offering petitioner an improvement period or additional services.

Petitioner argues that the circuit court's finding that there was no reasonable likelihood that the conditions of abuse or neglect could be substantially corrected was not supported with specific evidence. However, the order being appealed clearly provides sufficient support for the finding, including petitioner's failure to acknowledge the conditions of abuse and neglect and her refusal to participate in services to rectify the conditions of abuse and neglect. Further, the Court finds no merit in petitioner's argument that West Virginia Code § 49-6-5(b)(1) does not provide for termination of parental rights when a child has been placed with a relative. West Virginia Code § 49-6-5B lists circumstances in which the DHHR is statutorily required to file or join in an abuse and neglect petition, and § 49-6-5B(b)(1) notes an exception that the DHHR may elect to not file a petition when the child has been placed with a relative. That code section does not prevent circuit courts from terminating parental rights when children have been placed with a relative. As noted above, West Virginia Code § 49-6-5(a)(6) instructs circuit courts to terminate parental rights upon findings that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected and when termination is necessary for the child's welfare. Those findings were made below and supported with substantial evidence, and the Court finds no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court and its June 13, 2013 order is hereby affirmed.

Affirmed.

**ISSUED**: November 26, 2013

**CONCURRED IN BY**:
Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

5